## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **NATASHA MINDLING,** | : | **CIVIL ACTION** |
| | : | **NO.: 3:18-CV-01829-AWT** |
| **Plaintiff,** | : | |
| | : | |
| **V.** | : | |
| | : | |
| **GEORGE R. STIEGLER, JR.,** | : | |
| | : | **December 21, 2020** |
| **Defendant.** | : | |

### <u>PLAINTIFF'S MOTIONS IN LIMINE NOS. I-XI</u>

Pursuant to the Court's Trial Memorandum Order [Doc. 52], the plaintiff hereby submits her Motions in Limine.

**LAW:**

"A motion in limine allows the trial court to rule in advance of trial on the admissibility and relevance of evidence…." *Ziemba v. Lyn*ch, 2011 WL 4633117, at *1 (D. Conn. Oct. 4, 2011) (citations omitted). "Evidence is relevant if the testimony 'ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Izzarelli v. R.J. Reynolds Tobacco Co.*, 806 F. Supp. 2d 516, 530 (D. Conn. 2011) (quoting and citing Second Circuit cases). *See* Fed. R. Evid. 401. Generally, "[a]ll relevant evidence is admissible," and "[e]vidence which is not relevant is not admissible." *HSB Group, Inc. v. SVB Underwriting, Ltd.*, 2010 WL 5343005, at *1 (D. Conn. Dec. 20, 2010) (quoting Fed. R. Evid. 402). Even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair

prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay [or] waste of time...."  Fed. R. Evid. 403.

I.      **Motion in Limine to Preclude Evidence, Reference, Inference or Argument Concerning Other Allegedly Harmful People, Events or Behaviors in the Plaintiff's Life and Any Alleged Causal Relationship Between Such People, Events and Behaviors and the Injuries Asserted in the Complaint**

The defendant may seek to blame the plaintiff's mental and emotional suffering and other injuries on one or more people, events and behaviors in the plaintiff's life before, during and after the abuse inflicted by the defendant.  These other alleged causes of the plaintiff's injuries may include, but are not limited to: the plaintiff's biological parents, the family circumstances of the plaintiff's family of origin including her parents' divorce, events during the plaintiff's life before and after the defendant's abuse, and the plaintiff's own choices and behavior before and after the abuse.  However, the defendant has disclosed no expert witness to give competent opinion testimony that any person, event or behavior in the plaintiff's life caused or contributed to her injuries. Without expert testimony to establish the causal connection, these other events, people and behaviors are entirely irrelevant to any issue in the case.

The plaintiff moves to preclude the defendant from offering testimony, evidence, argument or inference about these matters because (1) they are irrelevant to any of the claims or defenses in the case and, thus, have no probative value whatsoever, (2) even if these matters had some marginal probative value (they do not), such marginal value is substantially outweighed by the danger of unfair prejudice against the plaintiff and in favor of the defendant, (3) the defendant lacks the necessary expert opinion testimony, and (4) evidence concerning these irrelevant matters would confuse the issues, mislead the jury, delay the trial, and waste the Court's, the jury's and the parties' time.

2

## II.    Motion In Limine to Preclude Evidence, Reference, Inference or Argument Concerning Any Alleged Contributory Negligence by the Plaintiff's Mother or Biological Father

The defendant may seek to blame part or all of the plaintiff's mental and emotional suffering and other injuries on her parents, her parents' treatment of her, and other family circumstances occurring while the plaintiff was a minor.  However, any such attempt to blame the plaintiff's biological parents for her injuries is prohibited under Connecticut law, and the defendant must be precluded from making or insinuating any such argument at trial.  *See Munn v. The Hotchkiss School*, 24 F. Supp. 3d 155, 191-92 (D. Conn. 2014) ("Connecticut courts have been loathe to diminish or bar a child's recovery for injuries caused by a parent's negligence, noting that regardless whether parental negligence is raised as a special defense, counterclaim, or apportionment, 'the effect is the same—it diminishes the child's recovery.  Current law does not permit such diminution.'").  *See also Crotta v. Home Depot, Inc.*, 249 Conn. 634, 643 (1999) ("[T]he doctrine of parental immunity operates to preclude third party actions against the parent of a minor plaintiff on the basis of the parent's allegedly negligent supervision of the child.").

> Post-*Crotta* decisions of the Superior Court have determined that the parental immunity doctrine precludes allegations of a parent's contributory negligence as a special defense to an action brought on behalf of a minor plaintiff…. Therefore, the court finds that the defendant's special defense fails as a matter of law. Its attempt to impute to [the plaintiff] the alleged negligence of his mother is barred by the doctrine of parental immunity.

*Rumm v. Shack Rest.*, 2011 WL 1468361, at *4 (Conn. Super. Mar. 25, 2011) (citations omitted).

Recent Connecticut Superior Court cases have followed the principle set forth in *Crotta* and have held that a defense of parental contributory negligence is barred even

when the parent brings an action directly.  The principle is all the stronger when, as here, the parents have not brought any cause of action on their own behalf.  *See*, *e.g.*, *Ledger v. Plunkett*, 2016 WL 1443901, at *5 (Conn. Super. Mar. 17, 2016) ("The majority of post-*Crotta* Superior Court decisions have stricken contributory negligence special defenses against parents on the ground that the special defense would . . . place at issue the nature and adequacy of the plaintiff's exercise of parental discretion on matters that are protected by the parental immunity doctrine.") (internal citation and quotation marks omitted); *Browning v. Thomaston Comfort, Inc.*, 2015 WL 2167498, at *3 (Conn. Super. Apr. 13, 2015) ("The reasoning of the cases barring parental negligence as a special defense regardless of whether the parent is bringing an action on his or her own behalf are persuasive and consistent with the ruling in *Crotta*."); *Austin v. Rozmyslowicz*, 2014 WL 1722206, at *5 (Conn. Super. Apr. 3, 2014) (same).

Accordingly, the defendant may not raise alleged contributory negligence by the plaintiff's mother or biological father for any purpose whatsoever, and the Court must prohibit the defendant from stating or insinuating that either or both of the plaintiff's parents were negligent or are in any way responsible for her injuries.

### III.    Motion in Limine to Preclude Evidence, Reference, Inference or Argument Concerning Any Alleged Contributory Negligence by the Plaintiff

The defendant must be precluded from asserting an affirmative defense of contributory negligence, and from offering any evidence or argument in support of such a defense, because he has failed to plead an affirmative defense of contributory negligence as required by the Connecticut Practice Book.[1]

---

[1] Connecticut law governs this motion since "state law controls the burden of proof required to adequately raise affirmative defenses in diversity cases."  *Munn v. Hotchkiss*

An affirmative defense of contributory negligence must be affirmatively pleaded and supported by specific allegations: "If contributory negligence is relied upon as a defense, it shall be affirmatively pleaded by the defendant and the defendant shall specify the negligent acts or omissions on which the defendant relies."  Conn. Practice Book § 10-53; *see also* Conn. Gen. Stat. § 52-114.  Thus, "an injured party can be found chargeable with contributory negligence only in a respect fairly within the purview of the allegations of an appropriate special defense."  *Goodman v. Norwalk Jewish Ctr., Inc.*, 145 Conn. 146, 148, 139 A.2d 812, 814 (1958).  "When raising the defense of contributory negligence, the defendant must set forth the specific acts of negligence relied upon."  *Tempe v. Giacco*, 37 Conn. Sup. 120, 121, 442 A.2d 947 (Conn. Super. Ct. 1981) (citing 145 Conn. at 148-49).  Where a defendant fails to adequately plead the affirmative defense, the defendant is "precluded" from "any inquiry on [its] part into antecedent acts of negligence by the plaintiff."  *Delott v. Roraback*, 179 Conn. 406, 414, 426 A.2d 791, 795 (1980).

The case law is clear that a contributory negligence defense must be pled with specificity.  "[W]here a special defense is conclusory, it is legally insufficient."  *Ledger v. Plunkett*, 2016 WL 1443901, at *3 (Conn. Super. Ct. Mar. 17, 2016) (granting plaintiff's motion to strike contributory negligence defense where the defense "include[s] no specific facts of acts or omissions . . . and do not explain how the minor plaintiff was negligent").  *See also Cent. Connecticut Acoustics, Inc. v. N.Y.-Connecticut Dev. Corp.*, 2011 WL 1734440, at *4 (Conn. Super. Apr. 11, 2011) ("The defendant . . . has failed to

---

*Sch.*, 24 F. Supp. 3d 155, 186 (D. Conn. 2014) (internal citation and quotation marks omitted).

'specify the negligent acts or omissions on which the defendant relies' as directed by the section.  Without such specifics, the defendant has failed to allege any facts upon which the claim of contributory negligence is based and the plaintiff has no notice of the issues to be tried.  Without any facts, the defendant has failed to provide any support of its legal conclusion.").

Because the defendant failed to assert a special defense of contributory negligence, he is barred from asserting such negligence.  Therefore, the defendant must be precluded from offering evidence or argument concerning any alleged contributorily negligent acts or omissions of the plaintiff.

### IV.   Motion in Limine To Preclude Evidence, Reference, Inference or Argument Concerning the Plaintiff's Wealth or Affluence or Socio-Economic Status or Privilege

At the deposition of the plaintiff, the defendant's counsel asked the following questions:

"Q.  [MR. KEEFE] Would it be fair to say in your mind that you have had a privileged life?"

"Q.  You have never had a paying job…?"

"Q.  You have travelled the world constantly when not going to school?"

"Q.  And when you travel, do you travel first class?"

"Q.  Does [your father] rent [an apartment] for you?"

"Q.  What is the market value of the rent?"

"Q.  And your father pays all of the utilities, I take it?"

"Q.  Did anyone ever refer to you as a little rich girl who is very spoiled?"

Natasha Mindling Deposition Tr. (Exh. A) at 58-59, 121-122.  *See also id.* at 55 ("Q.  So during your life, your 22 year life, … how many paying jobs have you had?"); and 56

6

("Q.  And that's the only paycheck you have ever received in your life for employment?").

At the deposition of the plaintiff's father, the defendant's counsel continued with this improper line of questioning:

"Q.  [MR. KEEFE] Do you support her?"

"Q.  And what do you give her to support her?"

"Q.  Has she ever worked?"

"Q.  …  [D]o you intend to indefinitely support her?"

"Q.  Why don't you insist on her getting employment?"

James Mindling Deposition Tr. (Exh. B) at 9-10, 15-16.  The defendant's counsel also asked dozens of questions about the plaintiff's father's income, assets, and net worth. *Id.* at 5-8.

The plaintiff does not seek lost earnings.  These issues are entirely irrelevant to any claim or defense in the case, and it would be unduly prejudicial, misleading and confusing to allow the defendant to mention or inquire into them.

## V.      Motion In Limine to Preclude Evidence, Reference, Inference, or Argument That the Plaintiff's Interactions with the Defendant Were In Any Way Voluntary or Consensual

Under state and federal law, a minor cannot consent to sexual relations with an adult.  Accordingly, Natasha cannot have consented to, or volunteered for, or agreed to participate in, the sexual assaults, exploitation and abuse that led to the filing of this case; and it would be highly prejudicial, confusing and misleading for the defendant to state or insinuate otherwise.

**VI.    Motion in Limine to Preclude Evidence, Reference, Inference, or Argument that the Plaintiff Failed to Mitigate Damages**

The defendant has not pleaded a failure to mitigate damages special defense.  Even if he had asserted such a defense, he would have the burden of proof but has disclosed no expert witness to testify on these matters.  The defendant has no expert witness to testify that any act or omission of the plaintiff is the cause of one or more of the injuries alleged in this case.  In the absence of such expert testimony on a defense for which the defendant carries the burden of proof, he is unable to meet the elements of the defense, it would be unduly prejudicial to allow him to simply speculate about causation, and it would be unfair to allow the jury to guess about complex psychiatric matters for which they are ill-equipped and uninformed.  *See, e.g., Preston v. Keith,* 217 Conn. 12, 19 (1991) ("It is axiomatic that a charge on mitigation of damages must provide some indication to a jury that it should apply this doctrine only if a plaintiff's alleged failure to mitigate is found to have caused the aggravation of the injury."); *id.* at 22 ("To claim successfully that the plaintiff failed to mitigate damages, the defendant 'must show that the injured party failed to take reasonable action to lessen the damages; that the damages were in fact enhanced by such failure; and that the damages which could have been avoided can be measured with reasonable certainty.'").  *See also Drake v. Bingham,* 131 Conn. App. 701, 712-13 (2011) (Evidence of missed therapy appointments, *"in addition to the testimony of [medical expert witnesses} Adler and Feingold pertaining to the negative consequences of missing physical therapy appointments,* was sufficient to warrant

a jury instruction on the doctrine of mitigation of damages.") (emphasis added).

*See also Haskins v. Brown,* 2003 Conn. Super. LEXIS 1799 at *16 (June 23,

2003) ("The defendant offered no expert witness to proffer a value for what a

willing buyer would pay for the damaged unit. The defendant did not sustain his

burden to prove failure to mitigate damages.").

**VII.    Motion in Limine to Preclude Evidence, Reference, Inference, or Argument Concerning the Plaintiff's Alleged Promiscuity and Alleged or Actual Details of Her Sexual Relationships with Others**

At the deposition of the plaintiff, the defendant's counsel asked dozens of explicit

questions about the plaintiff's sexual relationships with others. The questions included:

"Q. Have you ever had any homosexual relationships?"

"Q. Have you ever had any sex with a female?"

"Q. … [A] sexual act cunnilingus."

"Q. [D]id you touch her genitals?"

"Q. [W]ith Jack [the plaintiff's boyfriend for six months when she was 12 years

old], what kind of sex did you have?"

"Q. And fellatio, cunnilingus or both?"

"Q. Would you have had sex with him 75 times during that period of time?"

"Q. Did you have an orgasm?"

Natasha Mindling Deposition Tr. (Exh. A) at 11-13, 19, and 21.

The defendant's counsel also marked as an exhibit and questioned the plaintiff

about photographs of her on a boat in France showing her topless but facing away from

the camera or with her breasts covered. The photos were taken years after the

incidents at issue in the case.  The defendant's counsel's questions about the photos

included:

> "Q.  It looks like you are showing your breasts off to somebody.  Is that what you are doing?"

> "Q.  Do you have a thing about showing your breasts off?"

> "Q.  Do you like men particularly to see your breasts?"

> "Q.  If a young kid is seeing these, seeing you pose like this, is that sexual abuse in your mind?"

> "Q.  … [I]sn't that abusive sexually to the child?"

Natasha Mindling Deposition Tr. (Exh. A) at 65, 69, 70-71.

> These types of questions continued at the deposition of the plaintiff's father:

> "Q.  Now, is your daughter promiscuous in your opinion?"

> "Q.  Did you ever have occasion yourself, sir, to caution Natasha about her sexuality or the way she dressed, the way she acted, anything to do with promiscuity or sexual behavior?"

James Mindling Deposition Tr. (Exh. B) at 22, 35-36.

> Sex with children is against the law.  The victim's alleged "promiscuity", the fact

that she has engaged in consensual sexual relationships with others, and the details of

those relationships are irrelevant to any claim or defense in the case, and would be

unduly prejudicial and confusing.

> **VIII.    Motion In Limine to Preclude Evidence, Reference, Inference, or Argument Concerning Sexually Transmitted Diseases**

> At the plaintiff's deposition, the defendant's counsel asked:

> "Q.  Did you ever get checked out for sexual diseases?"

> "Q.  …  Have you ever gone to the doctor for the specific purpose of getting checked up for sexual diseases?"

"Q.  You were checked at those visits in the high school for sexual diseases, weren't you?"

Natasha Mindling Deposition Tr. (Exh. A) at 23-24.

Whether the plaintiff has ever contracted or sought treatment for a sexually transmitted disease is irrelevant to any claim or defense in the case, and any evidence or questions on that topic would be unduly prejudicial and confusing.

### IX.    Motion In Limine to Preclude Evidence, Reference, Inference, or Argument Concerning the Plaintiff's Mother's or Anyone Else's Assessment of the Plaintiff's Credibility

At the deposition of the plaintiff, the defendant's counsel asked:

"Q.  Your mother thinks you are a liar.  You understand that, don't you?"

Natasha Mindling Deposition Tr. (Exh. A) at 42.

The credibility of witnesses is for the jury to decide.  Any speculation or opinion, especially by witnesses biased against and adverse to the plaintiff, that she is not telling the truth would be unduly prejudicial and confusing.

### X.    Motion In Limine to Preclude Evidence, Reference, Inference, or Argument Concerning Alleged Damage or Other Negative Consequences to the Plaintiff's Family Caused by the Bringing of this Lawsuit

At her deposition, the plaintiff's mother volunteered that this lawsuit "has torn our family apart" and "we could resolve this.  But that's not her intention, so let's break a family and go to war….  So now she's lost her mother and her sister."  Ariane de Galea Stiegler Deposition Tr. (Exh. C) at 44, 83.  On examination by the defendant's counsel, the plaintiff's mother continued this theme:

Q. This lawsuit has had a devastating effect on you, hasn't it?

MR. PONVERT:   Objection.

A. Yes, it has.

Q. In what way?

MR. PONVERT:   Objection.

A.  In many ways.  With me, my husband, and our daughter, who wants nothing to do with her sister now because of this since she's accusing her father directly. And it's a cause of distress.  And for me and Chip, to just live through this and wait, you know, deposition after deposition, it's just not something you want to do with your life.  I have a lot of things going on in my life right now.  Some of them are good, some of them are, you know -- but this is just adding to the plate.  And we don't need this.

Q. You know she's accused your husband of being a pedophile?

A.  Yeah.

Q.  How has that affected you?

A.  It's horrible. It's a horrible accusation.

*Id.* at 102-103.

At the deposition of the plaintiff, the defendant's counsel continued the theme:

"Q.  Did you hear [your mother] say you have torn the family apart?"

"Q.  …  With respect to who is to blame for the disintegration of this family … are you to blame in any way, shape or form?"

"Q.  …  Well, you knew when you brought this suit [your relationship with your mother] would be over?"

"Q.  Anyhow, it turns out that your relationship with your mother is currently non-existent.  Correct?"

Natasha Mindling Deposition Tr. (Exh. A) at 43, 120, 138-39.

The effect or alleged or possible effect of this lawsuit on members of the

plaintiff's family is irrelevant to any claim or defense in the case, and any evidence on

that topic would be unduly prejudicial and confusing.

**XI.    Motion In Limine to Preclude Evidence, Reference, Inference, or Argument Concerning the Plaintiff's Report to the Westport Police Department or Any Other Law Enforcement Agency and the Decision Not to Investigate, Arrest or Charge the Defendant**

Prior to bringing this lawsuit the plaintiff reported the defendant's abuse to a detective at the Westport Police Department.  The police declined to arrest the defendant and no charges were brought against him.  The defendant and his lawyers know this, and it was the subject of questioning by Attorney Keefe at the plaintiff's deposition.  The decision by law enforcement to decline to investigate, arrest or charge the defendant is irrelevant to any claim or defense in the case, and it would unduly prejudice the plaintiff to allow the jury to speculate about the reasons for that decision, especially given that the criminal burden of proof (beyond a reasonable doubt) is much higher than the preponderance burden the plaintiff must meet here, and because different statutes of limitations apply in the civil and criminal contexts.

Respectfully submitted,

BY s/Antonio Ponvert III
ANTONIO PONVERT III ct17516
KOSKOFF, KOSKOFF & BIEDER, P.C.
350 FAIRFIELD AVENUE
BRIDGEPORT, CT 06604
Tel: 203-336-4421
(203)368-3244 (facsimile)
aponvert@koskoff.com

**<u>CERTIFICATION</u>**

I hereby certify that a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

<u>**/S/**</u>_____

Antonio Ponvert III